## STATE OF TENNESSEE ex rel. RONALD KEITH GEORGE, Plaintiff in Error, v. C. MURRAY HENDERSON, Warden, Defendant in Error.

Court of Criminal Appeals of Tennessee. June 17, 1968.

Certiorari Denied by Supreme Court Oct. 7, 1968.

Hugh W. Stanton, Jr., Asst. Public Defender, Memphis, for plaintiff in error.

George F. McCanless, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Don D. Strother, and Lloyd A. Rhodes, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

OLIVER, Judge.

Plaintiff in error, the petitioner below, appeals to this Court from the judgment of the Criminal Court of Shelby County dismissing his petition for a writ of habeas corpus, after a full evidentiary hearing.

On May 25, 1964, upon pleas of guilty, represented by privately retained counsel, the petitioner was convicted in the Criminal Court of Shelby County on two cases of rape and two cases of assault and battery with intent to commit rape. Each of the four indictments involved an offense against a different woman. He was sentenced to imprisonment in the penitentiary for thirty-five years in each of the two rape cases, and ten years on each of the two assault cases. The trial court ordered the two thirty-five-year rape sentences to be served consecutively, and the two ten-year sentences for assault to be served concurrently with the rape sentences, thus making a total sentence of seventy years.

At the hearing of this petition, the evidence was limited to the single question of the procedure followed in the Criminal Court of Shelby County on petitioner's pleas of guilty. Counsel for the petitioner and the State agreed that all other issues had been litigated in previous habeas corpus proceedings.

According to this record, the petitioner's privately retained counsel, confronted with the extremely serious situation of a client charged with two capital offenses (T.C.A. § 39-3702) and two offenses for each of which the maximum punishment is twenty-one years in the penitentiary (T.C.A. § 39-605), with the full knowledge and concurrence of the petitioner and his family, negotiated an agreement with the District Attorney General providing that, upon pleas of guilty, the petitioner's punishment would be as above indicated.

At the trial, the Assistant District Attorney General in charge of the prosecution made a statement to the jury that the defendant had entered a plea of guilty in each of the four cases, outlined the essential facts of each case and read the petitioner's confession, stated and recommended to the jury the sentences agreed upon; the trial court then instructed the jury that if they were willing to accept these sentences as recommended by the Assistant District Attorney General they should so indicate by standing and raising their right hands to be sworn; every juror stood and was sworn; no evidence of any nature was presented to the jury after they were sworn, and they did not leave the jury box or retire for deliberation; upon the "jacket" of each case (the Manila envelope containing the court file) the Assistant District Attorney General wrote out a complete verdict finding

the defendant guilty and fixing his punishment at imprisonment in the penitentiary for the number of years agreed upon in that case; those "jackets" were then handed to the jury by the clerk and one of the jurors signed each verdict as foreman of the jury. The court then pronounced sentence upon the defendant in each of the cases, as above indicated. The petitioner and his counsel were present in court during the entire proceeding and raised no objection to the manner in which the cases were presented and disposed of.

In a Memorandum Opinion filed in this case, the trial judge stated:

"The petitioner never requested a trial at the time on a plea of not guilty, nor did he request such trial at his hearing for Writ of Habeas Corpus, nor did the petitioner make any objections to the procedure being followed and with his consent, nor did he or his counsel ask the jury to fix the punishment on the testimony of witnesses. Petitioner does not contend that the proceedings were involuntary."

State ex rel. George v. Johnson, 217 Tenn. 1, 394 S.W.2d 641, was a prior habeas corpus case in which the petitioner appealed from the judgment of the Circuit Court of Davidson County dismissing his petition. Holding that the evidence sustained the trial court's finding that the petitioner's pleas of guilty were not unauthorized, the Court said:

"He admitted on cross examination that he at no time told the trial judge that he desired a trial on the charges or that he had not authorized Mr. Peiser or Mr. Goldberger to enter the pleas of guilty.

\* \* \* \* \* \*

"Petitioner admits he did not call to the attention of Judge Sellers the fact he had not authorized anyone to enter pleas of guilty for him in the rape and assault cases."

Thus, it is now irrevocably settled and conceded by the petitioner that he voluntarily entered his pleas of guilty at his original trial.

The Assignments of Error are that the trial court erred in dismissing the petitioner's petition for the writ of habeas corpus because:

1. The jury which heard defendant's pleas of guilty in four cases heard no evidence and the procedure required by T.C.A. § 40-2310 was not followed.

2. Defense counsel and the State made an unlawful agreement as to the amount of time which the defendant was to receive.

3. The trial court erred in requiring, as a pre-requisite to serving on the jury which convicted the defendant, that the jurors agree to the recommendations made by the State.

■ ■ With respect to the first Assignment of Error, it is no longer open to question that testimony of witnesses is not essential to a valid verdict and judgment in a criminal case wherein the defendant enters a plea of guilty. In State ex rel. Edmondson v. Henderson, 220 Tenn. 605, 421 S.W.2d 635, the Court said:

"Although T.C.A. § 40-2310 provides that upon a plea of guilty, when the punishment is confinement in the penitentiary, a jury shall be impaneled to hear

the evidence and fix the punishment, this is not a constitutionally afforded right, and is waived when a defendant, acting on advice of counsel enters a voluntary, knowledgeable plea of guilty, and allows a judgment of conviction to become final. And moreover, does not exhaust appellate remedies afforded him. So far as we are aware, there is no state or federal holding that in addition to a voluntary, knowledgeable confession of guilt by a plea of guilty, there must also be proof of the guilt introduced before the jury. In Tennessee, the right under consideration is simply a statutory right, and may be waived. State v. Simmons, 199 Tenn. 479, 287 S.W.2d 71; McCord and Anglin v. Henderson, Warden, C.A.6th Cir., 384 F.2d 135, opinion filed October 25, 1967."

In McCord and Anglin v. Henderson, (6th Cir., 1967) 384 F.2d 135, the Sixth Circuit Court of Appeals had this to say:

"The evidence given to the jury consisted mainly of a recital of facts made by the Tennessee District Attorney General. Counsel for each petitioner had stipulated to the correctness of such recital. Petitioners complain that only by producing before the jury eye witness or other direct evidence of guilt could the Tennessee procedure be obeyed. In affirming dismissal of the state habeas corpus proceeding, the Supreme Court of Tennessee discussed, without finding fault, the procedure followed in the State Court. We are of the opinion that if there was less than satisfactory compliance with Tennessee law in submitting evidence to the jury, it did not deny petitioners fair treatment or any fundamental constitutional right.

Violation of a state statute does not by itself, constitute deprivation of any right granted by the United States Constitution. Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497, 504 (1944); Beck v. Washington, 369 U.S. 541, 554-555, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); Townsend v. Sain, 372 U.S. 293, 311-312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)."

In state ex rel. Barnes v. Henderson, 220 Tenn. 719, 423 S.W.2d 497, the Court said:

"It is recognized in this State, as in all jurisdictions, that a plea of guilty must be made voluntarily and with full understanding of its consequences. In Brooks v. State, 187 Tenn. 67, 72, 213 S.W.2d 7, 9 (1945), we said:

"'A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury, it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice with full understanding of the consequences.'

"The general rule is to the same effect:

"'In general, a plea of guilty in a criminal case is not evidence and does not create evidence; but it does dispense with evidence. Thus it is the general rule that it is not required in order to proceed to judgment, that the government produce evidence

of guilt, or of the crime, or of the essential facts of elements thereof. Accordingly, accused, after pleading guilty, ordinarily cannot raise the issue of the sufficiency of the evidence.' 22 C.J.S. Criminal Law § 424 (4).

"We paraphrase, as accurately stating the law, the following from the State's Reply Brief. That both the assistant district attorney and counsel for petitioner were officers of the court and owed the duty to the court and to the jury to submit accurate information to both with regard to the offenses; that the duty was owed by defendant's counsel to object to any misstatement of fact or mistake with regard thereto with respect to the charge; that the trial judge had to be satisfied with the statement of the case to the jury and approve the recommendation of the punishment, and he was so satisfied and did so approve; that petitioner and his counsel were present at the time the statements were made to the jury and in fact were the moving parties in securing an agreement with the district attorney-general, and in asking that the plea of guilty be accepted. So that when petitioner and his counsel made no objection to the statement of facts made to the judge and jury either for insufficiency or mistake, knowing that the facts were being stated to the jury as a basis upon which the jury was to act upon the plea of guilty, and knowing and understanding further, that on the basis of the statement of fact the petitioner was to receive the minimum sentence, which might reasonably have been longer if the child he was charged with raping had been brought before the jury, the petitioner is estopped in this collateral

proceeding from relying upon the objection the statute was not complied with.

"Moreover, there is no per se violation of a federal or state constitutional right by non-compliance with the strict terms of the statute. Clearly, no federal constitutional right is presented, because there is no similar requirement in federal criminal proceedings nor in those of most other jurisdictions.

\* \* \* \* \* \*

"While we indulge every reasonable presumption against waiver of fundamental constitutional rights and do not presume acquiescence in the loss of fundamental rights, we find in the present case that petitioner and his counsel intentionally relinquished or waived the presentation of evidence by the injured party to the jury under T.C.A. § 40-2310.

"On the subject of waiver it has been noted that:

> " 'As a general rule, subject to certain exceptions, any constitutional or statutory right may be waived if such waiver is not against public policy. In fact, the trend of modern authority is in favor of the doctrine that a party in a criminal case may waive irregularities and rights, whether constitutional or statutory, very much the same as in a civil case. Some jurisdictions, however, regard certain rights as nonwaivable in capital cases, or even in felony cases generally. \* \* \*
>
> " 'Where a constitutional right accorded the accused is treated as waivable, it may be waived by express consent, by failure to assert it in apt time, or by

conduct inconsistent with a purpose to insist upon it.' 21 Am.Jur.2d Criminal Law, § 219.

"State ex rel. Lea v. Brown, 166 Tenn. 669, 64 S.W. 2d 841, 91 A.L.R. 1246 (1933), states:

> " 'A party may waive any provision of a contract, statute, or constitution intended for his benefit. Bouvier & Anderson's Law Dictionaries. These and other textbook authorities follow the language of Mr. Justice Strong in the early case of Shutte v. Thompson, 15 Wall. 151, 159, 21 L.Ed. 123, "a party may waive any provision, either of a contract or of a statute, intended for his benefit." So, it was said in a leading case, In re Cooper, 93 N.Y. [507], 512, "It is very well settled that a party may waive a statutory and even a constitutional provision made for his benefit, and that having once done so he cannot afterward ask for is [sic] protection. (Lee v. Tillotson, 24 Wend. [N.Y.], 337 [35 Am.Dec. 624]; Embury v. Conner, 3 N.Y. 511 [53 Am.Dec. 325]; Cooley's Const. Lim. 181.) The appellant is in this position. He participated as an actor in procuring the order which he now seeks to set aside, and took his chance. * * * To that end there was not only acquiescence on his part, but intelligent and efficient dealing with the matter and consent to the order. By this consent he must be deemed to have made his election and should be held to it." ' "

■■ Upon pleading guilty, the petitioner admitted all facts alleged and waived all non-jurisdictional defects, if any. Reed v. Henderson (6th Cir., 1967) 385 F.2d

995. A voluntary plea of guilty constitutes a waiver of non-jurisdictional defenses and alleged prior violations of the accused's constitutional rights. McCord and Anglin v. Henderson, supra.

The third Assignment of Error is the one most earnestly and insistently urged upon this Court. It and the second Assignment basically refer to the same complaint. There is no judicial precedent in this State upon this question. In State ex rel. Barnes v. Henderson, supra, our Supreme Court said this:

"The argument that it is customary to have the summary of the evidence presented to the jury before it is sworn in order that any juror who does not agree with the proposed sentence may be excused and replaced by a juror who will accept the recommendation has no application here as there is no showing any such thing occurred in this case."

The question raised here by the third Assignment is whether the petitioner's convictions and sentences upon his pleas of guilty were invalidated by a trial procedure whereby the prospective jurors were required to commit themselves, before being sworn and as a prerequisite to acceptance as jurors in the case, to return the verdict recommended by the State. The petitioner would answer his question by saying that such circumvention of T.C.A. § 40-2310 was such an illegal abnegation of the letter and spirit of that statute that the entire proceeding was tainted with illegality voiding his convictions and sentences. But the question is not quite so simple, and the petitioner completely overlooks salient facts which cannot be ignored. He initiated the negoti-

ations with the State which resulted in an agreement providing for mutually satisfactory and agreeable sentences for the petitioner, upon his pleas of guilty. He faced two capital cases and two assault cases in which the combined maximum sentence could be as much as forty-two years. By negotiation he accomplished his purpose of trading himself out of his crimes upon his own terms, thereby escaping a possible death sentence and obtaining in lieu thereof a sentence of imprisonment totaling seventy years as punishment for all four of his crimes; he was, therefore, directly and vitally interested in having his specific bargain approved and sealed, without alteration or change, by the verdict of a jury, any jury; he made no objection to the method by which the jury was selected and qualified; he not only determined the exact verdict of the jury in advance by driving a bargain with the State highly advantageous and favorable to himself, but he also quite naturally acquiesced in those verdicts rendered in exact conformance with his own plan and agreement.

As said by the Supreme Court in State ex rel. Lea v. Brown, 166 Tenn. 669, 64 S.W.2d 841, 91 A.L.R. 1246, "He participated as an actor in procuring the order which he now seeks to set aside, and took his chance. * * * To that end there was not only acquiescence on his part, but intelligent and efficient dealing with the matter and consent to the order. By this consent he must be deemed to have made his election and should be held to it."

The unusual procedure disclosed in this record was not challenged by the petitioner at the time. Whether he would have entered pleas of guilty at all if he had

known beforehand that a jury would be impaneled in the irregular manner and that they would be left entirely free to determine and fix his punishment after hearing the evidence and the law, and what verdicts such a jury might have rendered upon pleas of guilty under such circumstances, would be idle and useless speculation. The presiding fact is that the petitioner made his own bargain, deliberately planned and obtained its final approval by a jury, and he is estopped to repudiate it now by claiming that the procedure he adopted to accomplish his own purpose was illegal, even if it were.

The Assignments of Error are overruled and the judgment of the trial court is affirmed.

WALKER, P. J., and GILLIAM, J., concur.